DREWNIAK, Acting Superintendent of the House of Correction, Plaintiff in error, vs. STATE EX REL. JACQUEST, Defendant in error, and seven other cases.

*December 5, 1941—January 13, 1942.*

476

478

For the plaintiff in error there were briefs by the *Attorney General, William A. Platz,* assistant attorney general, and *Homer J. Williams,* district attorney of Waukesha county, and oral argument by *Mr. Platz* and *Mr. Williams.*

For the defendant in error there was a brief by *Corrigan & Backus* of Milwaukee, and oral argument by *August C. Backus, Jr.,* and *Walter D. Corrigan, Sr.*

## I.

ROSENBERRY, C. J. The defendant in error, hereinafter called the "defendant," moves to quash the writ of error for the reason that an order discharging a person from custody on a writ of *habeas corpus* is not reviewable at the suit of the state. The defendant relies upon *State v. Grottkau* (1889), 73 Wis. 589, 41 N. W. 80, 41 N. W. 1063. Grottkau was indicted, tried and convicted of the offense of riot, and was sentenced to confinement at hard labor for one year in the house of correction. Before the execution of his sentence began, the trial court granted a stay of execution pending determination of an appeal to the supreme court. The judgment was affirmed, and the *remittitur* filed in the municipal court on March 13, 1888. On April 5, 1888, Grottkau was committed to the house of correction pursuant to the sentence. On May 8, 1888, he was brought before a court commissioner on a writ of *habeas corpus* and a hearing was had on May 12th. The commissioner remanded Grottkau to the keeper of the house of correction and dismissed the proceeding. The

matter was removed by *certiorari* to the circuit court and that court by its order and judgment bearing date May 1, 1888, discharged Grottkau from custody. The state thereupon sought to review the order and judgment of the circuit court by writ of error. This court reversed the order of the circuit court discharging the defendant.

Upon a motion for rehearing, however, it was held that a writ of error did not lie at the suit of the state to review the judgment of the circuit court. The court said (p. 597) :

"When, as in the present case, a person convicted and imprisoned for crime is discharged from custody in a *habeas corpus* proceeding by a court of competent jurisdiction, the state cannot obtain a review of the order or judgment in that behalf by writ of error."

The court held that the writ was improvidently granted and directed that it be quashed and the case dismissed. Following the *Grottkau Case, supra,* ch. 239, Laws of 1889, was passed, which provided that a writ of error may issue to obtain a review by the supreme court of the order or judgment of any court remanding or discharging any person brought before it by writ of *habeas corpus.* This chapter became a part of sec. 3043, Stats. 1898, which is now sec. 274.05.

In *State ex rel. Isenring v. Polacheck* (1898), 101 Wis. 427, 77 N. W. 708, it was held under the statute that the state might sue out a writ of error where the prisoner was discharged upon *habeas corpus* proceedings. In that case, however, the writ was taken out in the name of the state on relation of Isenring, the sheriff. In this case the writ of error is sued out by Drewniak, the person in whose custody the defendant was.

In *State ex rel. Durner v. Huegin* (1901), 110 Wis. 189, 85 N. W. 1046, the facts were as follows : Certain persons had been charged with conspiracy and were in custody pending trial. A preliminary examination was had. The defendants

declined to give bail and were remanded to the custody of the sheriff whereupon they sued out of the circuit court a writ of *habeas corpus* to test the legality of their detention. The sheriff made return and justified under the commitment upon which he held them. Upon a hearing, the court entered an order discharging the prisoners. The sheriff sued out a writ of error to review the determination of the circuit court. The court held that he was an aggrieved party; that as such, he had the right to have the determination of the circuit court reviewed. The court also held in effect that a *habeas corpus* proceeding is a civil action (p. 218 *et seq.*).

It is to be noted that in the *Grottkau Case, supra,* the writ was sued out by the state of Wisconsin in the name of the state. It is clear from these decisions that the writ of error was properly granted and that the plaintiff in error is entitled to a review of the judgment of the circuit court.

We need not discuss whether the writ should be issued in the name of the state or in the name of the officer in whose custody the prisoner is. The decisions are not uniform. See 10 A. L. R. 385, note, Right of state or public officer to appeal from an order in *habeas corpus* releasing one from custody; III, (e), State or public official as "party aggrieved" by discharge, p. 396. See continuation, 30 A. L. R. 1322. Whether the state may properly sue out the writ in its own name or not, it is a party in interest and is entitled to be heard.

Motion of the defendant to quash the writ of error is denied.

## II.

In this court it is the contention of the defendant that the sentence began to run when the *remittitur* was filed in the circuit court; that the circuit court was without power under the facts of this case to stay the execution of the judgment and for that reason the sentence continued to run and expired

six months from February 1, 1939; that there is now no warrant in law for detaining the defendant.

It is to be noted in this case that sentence was imposed and the execution stayed. Stay of execution and suspension of sentence are terms which are often used interchangeably although they do not have the same legal significance.

The question for decision in this case is whether the trial court had power to stay the execution of the sentence from time to time for the purpose of having the defendant available to testify at some future session of the grand jury.

There are in this country two lines of authority upon this question: First, in some jurisdictions it is held that a court has inherent power to stay execution in whole or in part whether consented to by the defendant or not, and in some of these jurisdictions it is held that the stay may be made indefinite. In other jurisdictions it is held that a trial court has no inherent power to stay execution of the sentence, and that execution of a sentence cannot be stayed unless authorized by statute except for the purpose of giving effect to an appeal; to enable the judge to better satisfy his own mind as to what the punishment should be or for some reason which affects the sentence itself. In *Ex parte United States* (1916), 242 U. S. 27, 37, 39, 37 Sup. Ct. 72, 61 L. Ed. 129, the matter of the power of the court to stay sentences was given thorough and exhaustive consideration. In that case one Mitchell had been found guilty of embezzlement and had been sentenced to imprisonment for five years. Over the objection of the United States district attorney, the court ordered—

"that the execution of the sentence be, and it is hereby suspended during the good behavior of the defendant, and for the purpose of this case this term of this court is kept open for five years."

The United States moved to set this order aside on the ground that—

"it was not a mere temporary suspension of the sentence to enable legal proceedings pending or contemplated to revise it to be taken, or application for pardon to be made, or any other legal relief against the sentence to be resorted to, but on the contrary as it was a permanent suspension based upon considerations extraneous to the legality of the conviction or the duty to enforce the sentence, the order of suspension was void as it was equivalent to a refusal to carry out the statute."

The trial court denied the motion and filed a statement giving the court's notions as to the modern theory of punishment for crime, commented upon the intimate and peculiar knowledge that a trial judge has of the conditions under which the sentence is imposed, as well as of the circumstances under which the crime was committed and closed with this sentence:

"However, we considered the defendant from many standpoints to be as worthy of the benefit of the discretion to suspend the execution of his sentence as any other convict upon whom that favor has hitherto been bestowed."

The United States obtained a rule to show cause why *mandamus* should not be awarded directing the judge to vacate the order of suspension and in that way the matter was brought before the supreme court of the United States.

The court held, (1) that the court had no inherent power permanently to stay an execution of the sentence; (2) that at the common law the courts had no such authority; and (3) that by the weight of state and federal authority courts did not have such authority.

The court then critically examined the decisions of the state and federal courts. From the citations which are found in the margin, it appears that the following states adhere to the doctrine that courts have no inherent power to stay: Michigan, Indiana, Utah, Kansas, Illinois, New York, North Dakota, Wisconsin, Iowa, Tennessee, Colorado, Maine, Florida, Missouri, Georgia, Minnesota, Idaho, South Caro-

lina, Mississippi, Texas, and Kentucky. Adjudications in the following states support the proposition that courts have such power: New Jersey, North Carolina, North Dakota, New Hampshire, Arkansas, Utah, and Pennsylvania. While *Ex parte United States, supra,* deals with the power of the court to suspend a sentence indefinitely, in the course of the opinion it became necessary for the court to discuss the extent of the power of courts to stay execution in criminal cases. The court held that a trial court had certain limited powers with respect to staying execution. It appears in many states the matter is controlled wholly or in part by statute. That accounts for the fact that decisions from the same state are cited in support of both propositions. North Dakota and Utah are examples. In the absence of statute the great weight of authority is to the effect that the power to postpone indefinitely or for any other reason than that it is necessary to afford legal relief against the sentence itself does not exist. *Ex parte United States* has been so interpreted by the circuit court of appeals of the Second circuit, *United States v. Greenhaus* (2d Cir.), 85 Fed. (2d) 116, 119.

It is considered that this court is committed to the doctrine that courts have no inherent power to stay execution of a sentence in a criminal case in the absence of statutory authority except for the limited purpose of affording relief against the sentence itself.

*In re Webb* (1895), 89 Wis. 354, 355, 356, 62 N. W. 177, was a *habeas corpus* proceeding. The defendant had been convicted of a crime and sentenced to pay a fine and the costs of prosecution and "stand committed to the common jail of the county until such fine and costs were paid, the period of imprisonment to be limited to six months." He paid the costs but did not pay the fine. The sentence was pronounced on the 16th day of March, 1894. October 12, 1894, at the succeeding term of the court, the defendant was present in court

with his counsel and the court ordered that he fully comply with the sentence or be committed to the common jail until the fine was paid, not exceeding six months. He did not pay the fine and a commitment was issued accordingly. A writ of *habeas corpus* was sued out by the defendant. The sheriff made return stating the facts, to which the defendant demurred. The court said:

"No legal reason appears to have existed to warrant the court in suspending its sentence, in whole or in part, after it had been pronounced, if it be conceded the court had such power. . . . While it may be said that the defendant is in no position to complain or take advantage of the clemency of the court, *the question at issue is one of power,* involving serious considerations of public policy respecting the administration of criminal justice. After the defendant had been convicted and the sentence of the law in legal and proper form had been pronounced against him, it is difficult to understand upon what principle the court could further interfere in the premises. The right of the court, for cause, within the exercise of a reasonable discretion, to postpone sentence or suspend sentence, as it is said, seems to be clear; but we think, both upon principle and authority, its right to suspend the execution of the sentence after it has been pronounced cannot be sustained, except as incident to a review of the case upon a writ of error, or upon other well-established legal grounds. After sentence given, the matter within these limits would seem to be wholly within the hands of the executive officers of the law."

The court did not define what was meant by "other well-established legal grounds." A study of the cases cited by the supreme court of the United States in *Ex parte United States, supra,* in support of the conclusion that inherent power does not exist to stay execution indefinitely in a criminal case indicates that the power of the court is restricted to stays having to do with relief in some form against the sentence itself. The objection made to the stay granted in *Ex parte United States* was that it was based upon a consideration extraneous

to the legality of the conviction or the duty to enforce the sentence. The grounds for stay in this case are certainly extraneous to the legality of the conviction and to the duty to enforce the sentence. The stay in this case was granted for no other reason than for the convenience of the prosecuting officers in the conduct of another investigation. It is considered that the court had no power to grant a stay for that reason.

The statute provides for a stay of execution in criminal cases to enable a writ of error to be procured or an appeal to be taken (sec. 358.14, Stats.). Ch. 57, sec. 57.01 *et seq.*, Stats., provides for suspension of sentence and stay of execution and the placing of convicted persons upon probation or parole. Sec. 359.07 provides:

". . . All sentences shall commence at twelve o'clock, noon, on the day of such sentence, but any time which may elapse after such sentence, while such convict is confined in the county jail or is at large on bail, or while his case is pending in the supreme court upon writ of error or otherwise, shall not be computed as any part of the term of such sentence. . . ."

The effect of these statutes by necessary implication is to restrict and limit the power of the court in the premises. We do not hold that the court is without power to grant any stay whatever. All of the cases recognize the fact, that for what in the *Webb Case, supra,* is called legal cause, the court may grant temporary stays. Such stays, however, can only be granted for good cause, having to do with the sentence itself, and not on grounds which have no relation to the action in which the sentence is pronounced and are more properly for the consideration of the governor, in whom the power to pardon is vested, rather than the judiciary.

It appears from the decision in *Ex parte United States, supra,* that it was vigorously contended on behalf of the prisoner that great hardship would result if the court should deny the power of the court to stay the sentence; that many

prisoners were at large under similar circumstances; that it was the opinion of many informed persons that reformation might be brought about by staying execution and that in many cases it would prevent the court from adjusting the sentence to the peculiar conditions disclosed by the trial. A similar suggestion has been made in this case. In answer to that contention the supreme court of the United States said (p. 52) :

"The fact that it is said in argument that many persons, exceeding two thousand, are now at large who would otherwise be imprisoned as the result of the exertion of the power in the past, and that misery and anguish and miscarriage of justice may come to many innocent persons by now declaring the practice illegal, presents a grave situation. But we are admonished that no authority exists to cure wrongs resulting from a violation of the constitution in the past, however meritorious may have been the motive giving rise to it, by sanctioning a disregard of that instrument in the future. On the contrary, so far as wrong resulting from an attempt to do away with the consequences of the mistaken exercise of the power in the past is concerned, complete remedy may be afforded by the exertion of the pardoning power; and so far as the future is concerned, that is, the causing of the imposition of penalties as fixed to be subject, by probation legislation or such other means as the legislative mind may devise, to such judicial discretion as may be adequate to enable courts to meet by the exercise of an enlarged but wise discretion the infinite variations which may be presented to them for judgment, recourse must be had to congress whose legislative power on the subject is in the very nature of things adequately complete."

In *Ex parte United States, supra,* the court suspended the issuance of the writ of *mandamus* until the end of the term to enable an application to be made for executive clemency. In our opinion the answer made to the arguments of counsel by the supreme court of the United States in *Ex parte United States* is adequate and conclusive upon the question. The

stay of execution granted in *Ex parte United States* was con-
demned on the ground of lack of power. It was not con-
demned merely because it was indefinite. If the supreme
court of the United States had been of the view that the trial
court had power to suspend the sentence for extraneous
reasons, it would have held the stay erroneous because of the
fact that it was indefinite and unreasonably long. It in effect
held the stay void because it was unconstitutional—that is,
that the court by way of granting a stay was in fact exercising
a power that belonged to the executive, not to the judiciary.
It clearly indicated that the power of the trial court to stay
execution was limited to a temporary purpose having relation
in some legal way to the sentence. When the trial court goes
beyond that limit and stays execution of sentence for reasons
having no relation to the sentence, it exceeds its power and its
act is void. It invades the legislative field as well as that of
the executive.

In this state the suggested remedies having been adopted,
under our stay and parole laws trial courts have broad dis-
cretionary power to deal with individual cases on their merits.
These powers are as broad and inclusive as in the opinion
of the legislature was consistent with sound public policy.
It is the function of the legislature to prescribe the penalty
and the manner of its enforcement; the function of the court
to impose the penalty; while it is the function of the executive
to grant paroles and pardons. It is the duty of each depart-
ment to function within the limits prescribed by the consti-
tution. This proposition does not require the citation of
authority. The fact that the defendant consented to the
granting of the stay of execution and that on June 9, 1939,
asked that the stay of execution be extended is immaterial in
this case. The court was without power to stay the execution
and that power could not be conferred by consent. *Welhouse
v. Industrial Comm.* (1934) 214 Wis. 163, 252 N. W. 717.

It is considered that the great weight of authority and the sounder reasoning supports the conclusion reached in the *Webb Case, supra,* and in *Ex parte United States, supra.* For authorities upon both sides, see 15 Am. Jur. p. 143, § 492, and cases cited. In this case the circuit court for Waukesha county had no authority to stay the execution of the sentence. For that reason the stay granted was a nullity, the sentence continued to run and expired six months from February 1, 1939. As the trial court found, there was no warrant in law for the detention of the defendant.

*By the Court.*—Judgment in each case is affirmed.