IN the MATTER OF IMPLEMENTATION OF FELONY SENTENCING GUIDELINES

Supreme Court

*Undocketed. Filed July 1, 1983.*
(Also reported in 335 N.W.2d 868.)

PER CURIAM. The court is asked to mandate, by rule, the use of the felony sentencing guidelines developed by the Advisory Committee for the Wisconsin Felony Sentencing Guidelines Project in all state trial courts for an 18-month period, beginning July 1, 1983. During that period, it is proposed that judges presiding at the sentencing in all cases covered by the guidelines, as part of the sentencing process and before sentence is pronounced, shall require the completion and verification of the information sections of the standard sentencing guidelines

form for the applicable offense published by the Director of State Courts and shall indicate on the record whether or not the sentence imposed is consistent with the guidelines and, if it is not, the reason for departure from the guidelines. Further, the presiding judge is to ensure that the standard sentencing guidelines forms used in the sentencing process are completed in full and returned to the Director of State Courts Office, which shall monitor and periodically report on the use of the guidelines.

While the information contained in the sentencing guidelines forms may be of value to the trial judges of this state, we conclude, for the following reasons, that it is inappropriate for this court to prescribe, by order, the use of the felony sentencing guidelines. No need has been satisfactorily established to justify the court's requiring the statewide use of the felony sentencing guidelines; our imposition of the guidelines on the trial judges throughout the state would constitute an unwarranted intrusion into the authority and discretion of the sentencing judges; prescribing penalties for criminal offenses is a matter of legislative, not judicial, policy; our promulgation of the guidelines and our order that they be used by all judges in the state would suggest that the court is prescribing presumptively appropriate sentences, which we are not prepared to do; the proposed guidelines are nothing more than a compilation of the average felony sentencing experience in the state since 1977. Therefore, the petition for an order requiring their use by the state's trial judges is denied. However, we believe it appropriate, and so direct, that statistical information on felony sentencing in Wisconsin be collected by the Office of the Director of State Courts and disseminated periodically to the trial judges.

In May, 1980, the Criminal Law Section of the Judicial Conference recommended that a study committee be formed to examine the concepts of sentencing guidelines

and determinate sentencing. After the Administrative Committee of the Courts obtained federal funding to conduct such a study, a committee was appointed. That committee, the advisory committee, developed a set of recommended ranges of sentence for four felonies, robbery, armed robbery, burglary and first degree sexual assault. These recommended ranges were originally based on empirical research of sentences pronounced in cases in Wisconsin's trial courts involving the four named felonies for the period January 1, 1977 through June 30, 1980. Information in those cases was collected concerning the personal background of the offender, the offender's criminal history and the severity of the crime of which the offender was convicted. Guideline matrices were then constructed for each of the four felonies, reflecting legal factors discovered to have been consistently and measurably related to those sentencing decisions and, in a limited number of instances, including legal factors that had not been found to be consistently related to sentencing but were, in the advisory committee's opinion, of such importance that they should be made a part of the system.

The felony sentencing guidelines consist of a form for each of the four felonies on which there is to be entered specific information concerning the offender's criminal history and the severity of the offense of which the offender was convicted, with points being given on the basis of such information. Those points are then to be totaled and applied on two scales, one for offense severity and one for offender criminal history, yielding a result which indicates the type of sentence, *i.e.*, probation or incarceration, by giving the percentage of offenders convicted of the same felony who were incarcerated by Wisconsin judges during the period studied, and specifies a range of sentence, for example, 42–60 months, which represents the average length of the sentences imposed in Wisconsin for that offense during that same period. The

sentencing judge is then to indicate on the guideline form the sentence actually imposed and whether that sentence fits within the guidelines set forth on the applicable matrix. In the event the judge sentences outside the guidelines, he or she is to indicate on the form the aggravating or mitigating circumstances listed on the form which served as the basis for the sentencing decision and to identify any other factors which served as the reasons for the sentencing decision. An example of the felony sentencing guidelines is set forth in the appendix to this opinion.

The sentencing guidelines formulated by the advisory committee for the four named felonies were implemented on a voluntary basis by circuit judges in four counties, Dane, LaCrosse, Milwaukee, and Waushara, commencing July 15, 1981. On January 1, 1982, circuit judges in Eau Claire, Marathon and Winnebago counties voluntarily agreed to use the guidelines experimentally, and on August 23, 1982, circuit judges in Racine county did likewise. On February 11, 1983, the advisory committee filed a petition with the court requesting that we order the use of the felony sentencing guidelines as developed by the advisory committee not just for the felonies[1] which had been the subject of the voluntary pilot program in eight counties, but for additional felonies, namely, felony theft, auto theft, forgery, second-degree sexual assault and violations of the Wisconsin Uniform Substances Act, as to which research of the sentencing practices of Wisconsin circuit judges during the period January 1, 1977 through June 30, 1981, were studied and which are continuing to be tested in the eight counties.

---

[1] Although the sentencing guideline for first degree sexual assault was used in the pilot counties, it is not proposed for statewide use because of difficulties experienced in applying it to the varying kinds of conduct coming within the statutory definition of the offense and because of the limited size of the data base on which it was developed.

Our concern with the proposal, which amounts to a request that the court fund the continuation of the sentencing study originally financed with federal funds obtained through the Wisconsin Council on Criminal Justice, is that the need for felony sentencing guidelines in Wisconsin has not been satisfactorily established. Three principal reasons for the promulgation of statewide felony sentencing guidelines by this court have been advanced by the advisory committee and others: it will remedy an unjustifiable disparity of sentences imposed by Wisconsin trial judges for like offenses, it will correct the public's perception that there is such disparity and it will neutralize the perceived threat that if sentencing guidelines are not developed and promulgated by the court system, the Wisconsin legislature will enact a set of "determinate" sentences, with the result that the discretion of the sentencing judge will be severely restricted, if not eliminated.

The January 31, 1983, report of the advisory committee, which is appended to the instant petition, states that there is no unjustified disparity in sentencing in Wisconsin courts. It reports the results of a felony sentencing study conducted from late 1977 to early 1979:

"Felony sentencing in Wisconsin—both as to type and length of sentence imposed—appears in most instances to be *appropriately* related to considerations of the criminal history of the offender and the relative severity of the offense. There are exceptions to that generalization: some judges do appear to be sentencing in the extreme (both high and low) in their handling of certain specific felony offenses. But, for the most part, allegations that felony sentencing in Wisconsin is unpredictably variable and thereby unjustifiably disparate were not borne out by the evidence." Study, at 16.

At the June 7, 1983, hearing, a representative of the advisory committee stated that it remains true that there is no significant disparity in felony sentencing in Wisconsin. Whether or not the general public has the impression

that Wisconsin judges vary too greatly in their sentencing of convicted felons does not appear to justify our imposing the use of the felony sentencing guidelines on trial judges throughout the state. If there is no significant sentencing disparity, but only an alleged public perception of disparity, we find this to be insufficient justification for imposing the financial and administrative burden incident to sentencing guidelines on the state. The public's perception, if accurate, should be corrected by the dissemination of documented factual information as to felony sentencing in the state.[2]

The third argument for the need to implement felony sentencing guidelines involves the respective roles of the judiciary and the legislature in the area of sentencing reform. We are told that if we do not mandate the use of felony sentencing guidelines statewide, the Wisconsin legislature will enact determinate sentencing legislation which will establish by law minimum sentences for specified offenses, as well as maximum sentences, which are

---

[2] For example, at the June 7, 1983, hearing, Fred Hinickle, chairman of the Wisconsin Parole Board, stated that at the present time slightly more than one-half of the persons sentenced to incarceration and released prior to serving the maximum sentence imposed on them are placed on parole by decision of the secretary of the Department of Health and Social Services, the secretary's designee or the parole board chairperson and released prior to their mandatory release date, which is established by state law. The parole board consists of six civil service employes and a chairperson in the unclassified service, all appointed by the secretary of DHSS.

Hinickle further stated that the decision to place an inmate on parole is his alone, that is, as chairman of the parole board, he has final decision-making authority delegated to him from the secretary of DHSS to act on the recommendations of the parole board. It is noteworthy that the members of the parole board, including the chairperson who makes the final parole decision in each case, are not elected and are directly accountable only to the secretary of DHSS and, indirectly, to the governor. Secs. 46.03 (6)(c), 57.06, Stats.; ch. HSS 30, Wis. Admin. Code.

now set by statute. Determinate sentencing, it is argued, will sharply reduce and perhaps even eliminate the exercise of discretion now within the authority and responsibility of the sentencing judge.[3] While the sentencing judge is in the best position to evaluate the circumstances of each case in order to determine what is an appropriate sentence for the offense, sentencing itself is a matter of legislative policy. "It is the function of the legislature to prescribe the penalty and the manner of its enforcement; the function of the court to impose the penalty; while it is the function of the executive to grant paroles and pardons." *Drewniak v. State ex rel. Jacquest,* 239 Wis. 475, 488, 1 N.W.2d 899 (1942).

It is the legislature which determines what is and what is not a crime in Wisconsin. It also determines the degrees of seriousness of crimes by classifying felonies and misdemeanors and establishing maximum penalties for each class. At the present time, the sentencing judge has the duty, as well as the authority, to exercise discretion in imposing penalties up to the maximum set by statute. It is for the legislature, however, to decide whether that discretion should be more closely circumscribed. We are not convinced that our requiring the use of felony sentencing guidelines throughout the state is appropriate or, for that matter, could even be effective to prevent the legislature from enacting determinate sentencing legislation.

As to the content of the proposed felony sentencing guidelines, we are in full agreement with the advisory committee that the sentence ranges contained in the

[3] Other actors in the criminal justice system who presently exercise discretion will be similarly affected by determinate sentencing, *e.g.*, the parole board, whose function is incompatible with determinate sentencing, and prosecutors, whose discretion to make a recommendation as to the length of sentence in exchange for a guilty or no contest plea now exercised in criminal cases will be converted into the discretion to bargain on the basis of the crime to be charged.

matrices for the named felonies, determined as they are by the actual experience of sentencing in Wisconsin trial courts, constitute a valuable "information tool," especially for those judges new to the trial court or felony sentencing bench. Such information can be helpful to a judge at the starting point of the exercise of his or her discretion in determining an appropriate sentence for a particular offender. Since its inception by order of this court in 1977, 73 Wis. 2d xxvii, we have supported continuing education for Wisconsin's judiciary, and, as part of that education, information on statewide sentencing of convicted felons should be collected and disseminated to members of the judiciary.

We are unwilling, however, to order the use of that information in sentencing as proposed for the reason that we are not in a position to prescribe at this time an "appropriate" type of sentence, that is, probation or incarceration, or an "appropriate" range of sentence where incarceration is imposed for persons convicted of specified felonies. That, in effect, is what we would be doing if we were to order that all trial court judges in the state employ the felony sentencing guidelines for the 18-month period. Certainly, the advisory committee expects that judges will sentence within the matrix ranges, absent any aggravating or mitigating circumstances, for it says in its Statement of Policy Underlying Sentencing Guidelines:

"The Wisconsin Felony Sentencing Guidelines System is designed to allow the exercise of judicial discretion while reducing variance by providing guideline sentences for similar offenders who commit similar offenses. These guidelines reflect previous sentencing practices in Wisconsin, and are a starting point for the exercise of judicial discretion in a particular case. Room is left for unique defendants or circumstances by providing the judge an opportunity to articulate reasons when she or he sentences outside the guidelines.

"The ultimate responsibility in imposing sentence must and should remain with the sentencing judge. The judge must weigh, consider and apply competing values in circumstances as diverse and complex as each individual defendant. To dispel any perception of unequal treatment in sentencing, these guidelines have been developed to assist the sentencing judge charged with that difficult duty."

The advisory committee could hardly expect the use of sentencing guidelines to reduce variance and dispel any perception of unequal treatment in sentencing if it did not intend that judges follow the guidelines and impose sentence within the guideline matrix ranges, except in cases where aggravating or mitigating circumstances dictate otherwise.

The proponents of the mandatory use of the felony sentencing guidelines insist that use of the guidelines does not *require* a sentencing judge to impose upon a person convicted of a specified felony a sentence which falls within the range set forth in the applicable matrix, only that it requires that a sentencing judge indicate on the record whether or not the sentence imposed is consistent with the guidelines and, if it is not, state the reasons for "departure." The training manual prepared for the sentencing guidelines cautions that the requirement for explanation when an imposed sentence departs from the guideline matrix "is solely for purposes of updating and revising the guidelines, and is not intended as a check on judicial discretion." Be that as it may, the effect is to suggest that a sentence within the range set forth in the matrix needs no explanation, that is, that it is appropriate.

The very requirement of explaining "departure" from the guidelines creates a presumption that a sentence within the range set forth in the matrix for the particular

offense/offender categories is appropriate, for it places the burden of showing the appropriateness of a sentence outside the matrix range on the sentencing judge. This, we believe, amounts to our prescribing "appropriate" types and lengths of sentences and constitutes an unwarranted intrusion into the sentencing discretion and authority of the trial judge.

Judges in Wisconsin, who are elected to office, have as one of their functions the sentencing of convicted criminals. We will not exercise our superintending and administrative authority over all courts, conferred upon us by the Wisconsin Constitution, Art. VII, sec. 3(1), to impose upon the trial bench's sentencing responsibility. Further, it has been the court's position that appellate review of a sentence challenged as an abuse of discretion "must be made in light of the strong policy against interference with the trial court's discretion in passing sentence." *State v. Killory,* 73 Wis. 2d 400, 408, 243 N.W.2d 475 (1976). Although the experiential sentencing information that has been generated by the sentencing guidelines project may be of value to the trial bench, for us to require that all Wisconsin trial judges use the felony sentencing guidelines would violate our policy not to interfere with their sentencing discretion.

It may be argued that the required use of the proposed felony sentencing guidelines by all trial courts in the state would result in an increase in appellate litigation. At the present time, sentencing judges are required to state on the record their reasons for imposing sentences in individual cases, *McCleary v. State,* 49 Wis. 2d 263, 182 N.W.2d 512 (1971), and the primary factors to be considered, *Elias v. State,* 93 Wis. 2d 278, 284, 286 N.W.2d 559 (1979). *See also, State v. Tew,* 54 Wis. 2d 361, 195 N.W.2d 615 (1972). The purpose of this requirement is to establish as a matter of record the extent to which the

sentencing judge exercised discretion in imposing sentence on an individual defendant and, thereby, to provide a record on which meaningful appellate review may be had in the event the defendant attacks the sentence as constituting an abuse of the trial judge's discretion. If we were to require sentencing judges to use the felony sentencing guidelines, a defendant whose sentence was greater than the outer limit of the range established by the guideline matrix, although within the statutory maximum for the offense, might be likely to use that fact as a basis to attack the sentence on the ground that the sentencing judge abused his or her discretion in imposing that sentence.

We are also concerned that the sentencing guidelines may be misconstrued as a sentencing policy adopted by the court. The information on which the proposed guidelines are based purports to reflect the actual felony sentencing done by Wisconsin judges between January 1, 1977 and June 30, 1981, based on offender history and offense severity; it does not purport to establish what the type of sentence or the sentence length *should be,* except as it may be read in "guideline" form to mean that what has been done since 1977 should continue to be done. We do not accept as a rational sentencing policy any empirically-based sentencing ranges, that is, ranges based on the actual sentences handed down by the state's trial judges over a specified period of time.[4] That would be to put the collected information to a use for which we are not convinced it is well suited.

---

[4] It has been argued that the period on which the proposed sentencing guidelines are based was a time of record incarceration rates in Wisconsin (and nationally) and results in a strong bias in the guidelines toward more frequent and longer sentences of incarceration.

To illustrate the minimal value of the proposed guidelines to the trial bench, except as information as to what has been done in the area of sentencing for the specified felonies, the advisory committee states in its 1983 report, "By December 31, 1982 when the system was in place in eight counties and had been used for almost 18 months, complete agreement had occurred 55% of the time and incomplete agreement 79% of the time." "Complete agreement" means agreement between the sentence range on the matrix and the sentence actually imposed, both in terms of type of sentence, *i.e.,* probation or incarceration, and length of incarceration; "incomplete agreement" means agreement between the matrix sentence and the sentence actually imposed only as to type of sentence. The modest (55 percent) agreement rate may be due to the guideline ranges being out of adjustment at one end or the other, but we are told that of the sentences given outside the ranges during the pilot period, half were above and half below the matrix ranges. It may also be that the sentencing factors on which the ranges are based fail to account for factors present in 45 percent of felony cases. Whatever the cause, it seems hardly appropriate to promulgate as "guidelines" sentence ranges which enjoy such doubtful validity in the opinions of those judges who have used them.

A "guideline" is "an indication or outline of future policy or conduct." *Webster's Third New International Dictionary,* 1967. We do not believe that the sentencing experience in the state should necessarily serve as an indication of future sentencing policy, and it is clear from the petition that it is not proposed that we do so. However, promulgation of the proposed felony sentencing guidelines by order of this court, with the requirement that they be used by every sentencing judge in the state, lends to the sentence ranges set forth in the matrices an

aura of validity which they do not deserve, notwithstanding that a sentencing judge need not be bound by them. We believe that if we are to promulgate felony sentencing guidelines, they should reflect a reasonable sentencing policy, one based on rational policy decisions, rather than a mere compilation of sentencing averages.

Another troublesome feature of the proposed sentencing guidelines is that they are not, nor are they intended to be, static. For example, the matrices for the four named felonies were revised to reflect additional empirical data gathered for the period June 30, 1980 to June 30, 1981, as well as from the period during which the felony sentencing guidelines were used on a pilot basis in selected counties since July 15, 1981. It is anticipated that the matrices will continue to be adjusted to accommodate additional experience as it is gained. Thus, even if we were to assume that the court approved the matrix sentence ranges as they are now contained in the guidelines as appropriate sentences based on offender history and offense severity, mandating their use at this time would constitute our acceptance of future "average" sentences, whatever they be, as appropriate sentences in specified cases. This is especially the case with the felony sentencing guidelines which have not yet been fully developed by the advisory committee.

For all of these reasons, we determine that the request that we impose, by order, the use of the felony sentencing guidelines on all trial judges in Wisconsin be denied. We direct the Office of the Director of State Courts to collect meaningful statistical information concerning the sentences imposed by the state's circuit coutrs on convicted felons and disseminate that information to the Wisconsin judiciary on such periodic basis as may be practicable for the information of all judges and the education of judges newly assigned to the felony courts.

## APPENDIX

STATE OF WISCONSIN
(FOR USE BEGINNING 1/83)

## FELONY GUIDELINES SCORING AND SENTENCING INFORMATION
## ARMED ROBBERY - 1983

| 1 -Court Case No. | 2-County | | 3-Sentencing Judge | | 4-Sentencing Date |
|---|---|---|---|---|---|
| 5-Offender's Last Name | First | M.I. | 6-Sex<br>1 ☐M  2 ☐F | 7-High School Diploma or G.E.D.<br>1 ☐Yes  2 ☐No | 8-Birthdate |
| 9-Employed At Time of Offense<br>1 ☐Yes  2 ☐No | 10-Race   1 ☐White  3 ☐Am. Indian<br>2 ☐Black  4 ☐Hispanic   5 ☐Asian<br>6 ☐Other | | 11-In Custody At Time of<br>Adjudication 1 ☐Yes  2 ☐No | | 12-Offense Date |
| 13- This is:  1 ☐ an original sentence  2 ☐ a new<br>sentence imposed after a sentence modification hearing<br>3 ☐ a sentence imposed after revocation of probation | 14- Final Plea entered<br>1 ☐Guilty  3 ☐No Contest<br>2 ☐Not Guilty | | 15- Was pre-sentence investigation ordered before sentencing?<br>1 ☐Yes  2 ☐No<br>If yes, name of agent who prepared it | | |

## CRIMINAL HISTORY SCORING

| | POINTS |
|---|---|

**16-** Did offender have legal status associated with an adult felony at time of current offense?
1 ☐ Yes = 1 point
2 ☐ No = 0 points

**17-** If yes, type of legal status: 1 ☐ Probation 3 ☐ Parole/Supervised Release
2 ☐ Bail 4 ☐ Other (e.g., escapee)

**18-** Does offender have MORE THAN three felony-type juvenile adjudications?
1 ☐ Yes = 4 points
2 ☐ No = 0 points
(If yes, list four such adjudications below.)

**19-**

| OFFENSE TITLE | DISPOSITION DATE | | OFFENSE TITLE | DISPOSITION DATE | |
|---|---|---|---|---|---|
| | Mo. | Yr. | | Mo. | Yr. |
| (1) | | | (3) | | |
| (2) | | | (4) | | |

**20-** Number of offender's prior adult felony convictions: _____ Multiply by 2 = _____ points
(List prior adult felony convictions below. If more than eight, list others on a separate sheet and attach.)

**21-**

| OFFENSE TITLE | DISPOSITION DATE | | OFFENSE TITLE | DISPOSITION DATE | |
|---|---|---|---|---|---|
| | Mo. | Yr. | | Mo. | Yr. |
| (1) | | | (5) | | |
| (2) | | | (6) | | |
| (3) | | | (7) | | |
| (4) | | | (8) | | |

**22-** Does offender have any prior convictions for violent felonies?
1 ☐ Yes = 8 points
2 ☐ No = 0 points
(If yes circle at least one violent prior conviction on listing above.)

**23-** TOTAL CRIMINAL HISTORY SCORE (A SCALE)

## SEVERITY OF OFFENSE SCORING

| | | POINTS |
|---|---|---|
| 24- Did offender have an operable gun while committing offense? | 1 □ Yes = 1 point<br>2 □ No = 0 points | |
| 25- Was offender convicted of concealing identity during offense? | 1 □ Yes = 2 points<br>2 □ No = 0 points | |
| 26- Did the victim suffer "bodily harm" (as defined in the statutes)? | 1 □ Yes = 3 points<br>2 □ No = 0 points | |

27- List all other charges an offender has been convicted of and is being sentenced on at this time, below.
If more than eight, list others on a separate sheet and attach.

| OFFENSE TITLE | OFFENSE DATE | | OFFENSE TITLE | OFFENSE DATE | |
|---|---|---|---|---|---|
| | Mo. | Yr. | | Mo. | Yr. |
| (1) | | | (5) | | |
| (2) | | | (6) | | |
| (3) | | | (7) | | |
| (4) | | | (8) | | |

28- Circle all charges listed above that are Class B or Class A felonies.
Number of circled Class B or A felonies: _____ Multiply by 4 = _____ points

29- TOTAL SEVERITY OF OFFENSE SCORE (B SCALE)

CC-2, 1/83

## ARMED ROBBERY MATRIX

Offender Criminal History (A Scale)

| Offense Severity (B Scale) | 0 | 1-6 | 7-12 | 13+ |
|---|---|---|---|---|
| 0 | 26-32 Months % Incar. = 45 | 42-60 Months % Incar. = 74 | 60-78 Months % Incar. = 100 | 78-102 Months % Incar. = 88 |
| 1-2 | 42-60 Months % Incar. = 62 | 60-72 Months % Incar. = 95 | 78-90 Months % Incar. = 100 | 102-108 Months % Incar = 95 |
| 3-7 | 60-72 Months % Incar. = 74 | 72-90 Months % Incar. = 95 | 90-108 Months % Incar. = 98 | 108-132 Months % Incar. = 100 |
| 8+ | 72-84 Months % Incar. = 91 | 90-102 Months % Incar. = 93 | 108-132 Months % Incar. = 91 | 132-156 Months % Incar. = 93 |

NOTE: Sentence ranges in the probation cells (the shaded cells) apply only if offenders are not placed on probation.

30 - Does the matrix indicate probation for the offender? 1 ☐ Yes  2 ☐ No

31 - If no, what length of prison time is indicated? _____ to _____ Months

32 - Was the offender placed on probation? 1 ☐ Yes  2 ☐ No

33 - If yes, what length of probation was imposed? _____ Months, and

34 - Was prison time  1 ☐ Stayed, or  2 ☐ Withheld, and

35 - Was county jail time imposed  1 ☐ Yes �truck 36 _____ Months
as a condition of probation?  2 ☐ No

37 - If no, how much prison time was imposed? _____ Months

38 - Terms of this Sentence:  1 ☐ Single Charge  2 ☐ Concurrent with _____  3 ☐ Consecutive to _____  4 ☐ Other

## 39-MITIGATING CIRCUMSTANCES

1. ☐ Victim does not want defendant severely punished.
2. ☐ Defendant's involvement in actual offense minimal or due to coercion, duress, or ignorance of commission of crime.
3. ☐ Defendant cooperated with authorities in apprehending or prosecuting other offenders.
4. ☐ Defendant's life, conduct or behavior has become stable since offense.
5. ☐ The defendant has maintained a substantial crime-free period, adult and/or juvenile, before this offense occurred.
6. ☐ Offender has demonstrated responsible action and judgment in other aspects of his or her life.
7. ☐ Defendant has made or will make restitution.
8. ☐ Defendant will participate in drug or alcohol treatment, or emotional/mental treatment, and it has been determined that such treatment will likely deter further criminal activity.
9. ☐ The offender lacked substantial capacity for judgment due to physical or mental impairment (does not include voluntary use of intoxicants, e.g., drugs or alcohol).
10. ☐ Defendant's age impaired judgment (extreme youth or extreme age).
11. ☐ Recommendation of the District Attorney.
12. ☐ Other circumstances that are listed below.

## 40-AGGRAVATING CIRCUMSTANCES

1. ☐ Special vulnerability of victim, such as victim young, elderly, handicapped or visibly pregnant.
2. ☐ Extreme injury to victim, including permanent physical or mental injury, disfigurement, or permanently handicapped (blinded, for example).
3. ☐ Wanton or extreme cruelty or depravity toward victim.
4. ☐ Offender used or threatened to use a firearm or other particularly menacing or dangerous weapon (if not included in matrix scoring).
5. ☐ Circumstances of offense indicate premeditation or extensive planning.
6. ☐ Extensive property damage, or contraband of unusual or great value, (e.g., artwork) or large amount of money.
7. ☐ If multiple participants, offender took major role or directed offense.
8. ☐ Multiple victims involved.
9. ☐ Prior juvenile offenses, especially prior violent juvenile offenses (if not included in matrix scoring).
10. ☐ Prior adult misdemeanors, especially prior violent misdemeanors.
11. ☐ Read-in offenses (if not included in matrix scoring).
12. ☐ Attitude or behavior of offender shows lack of remorse.
13. ☐ Other circumstances that are listed below and that are not included in the matrix scoring.

## 41 - JUDGE'S STATEMENT (Check one)

☐ The sentence imposed for this offense fits within the guidelines as shown on the matrix above.

☐ I have sentenced outside the guidelines. The aggravating or mitigating circumstances I have checked above plus any other factors listed here are the reasons for this decision.

**Additional factors are:**

| | |
|---|---|
| Signature of Sentencing Judge | Date |

*Within five days, mail this scoring sheet to: Office of Court Operations, Felony Sentencing Guidelines Study, 110 E. Main St., Room 503, Madison, WI 53703*

FOR OFFICE USE ONLY

DAY, J. (concurring). I concur in the majority opinion that the so-called sentencing guidelines not be made mandatory.

In addition to the cogent reasons set forth in the majority opinion, I am persuaded that the issue of sentencing is too important to be treated as a public relations job.

First of all the "guidelines," as we were repeatedly informed at the hearing, do not represent "ideal" or "correct" sentences for particular crimes but merely average ranges within which sentences have been imposed by judges in the past.

If they are not the sentences which *should* be imposed then what possible logic is there in requiring a sentencing judge to explain why he hasn't followed them?

The matter of proper sentencing and consistent sentencing is important and the danger is that if this Court were to adopt these guidelines, the public, the media and the legislature would be lulled into believing that "something has been done" when actually little or nothing would have been done either about appropriateness of sentences for particular crimes or uniformity.

The statistics cited by the proponents of the mandatory use of the guidelines point out that in those counties where the guidelines were used forty-five percent of the sentencing judges didn't follow the guidelines! What one has a right to wonder is: Why did fifty-five percent use them? Especially since the "guidelines" don't even pretend to be the "appropriate" sentence!

What these questions point up is the need for the legislature to act after public hearings on the issue. Experts of all persuasions could testify as well as law enforcement people, public defenders, crime victims and interested members of the public.

Then the legislature could determine either by guidelines or by determinate sentencing, what the penalties should be for various crimes. Only to state what should be done to arrive at a solution to the sentencing problem

is to show how ill equipped this Court is to make such determinations. It is obviously a legislative function—not a judicial one.

*No discussion of sentencing guidelines is complete unless the role of the parole system is understood and evaluated.*

We were reminded by Mr. Hinickle, Chairman of the State Parole Board, that a trial judge only imposes a sentence of "up to" a certain number of years and that it is for the chairman of the parole board to decide (after receiving recommendations from the remainder of the board) as to how much of the sentence is to be served!

Thus though 190 trial judges impose sentences for crime based on their perception of what amount of time a criminal should be incarcerated—*one man,* the Chairman of the Parole Board decides how much of that sentence will be served!

At the hearing, the example was given of a person sentenced to twenty years for first-degree sexual assault or second-degree murder. First of all, under the "good time" credit established by the legislature, such a criminal is going to serve something over nine years—less than half the sentence the judge imposed! This is referred to as the "mandatory release date." So unless a prisoner loses part of his "good time" through some infraction of the prison rules, he's "out on the street" in less than half the time of his sentence.

But Mr. Hinickle informed us, the head of the Department of Health and Social Services has delegated to him and him alone the authority to decide if a prisoner should be let out *before* the mandatory release date. He then informed us that more than fifty percent of the prisoners are released *before* the mandatory release date.

What possible value are even mandatory guidelines establishing "ideal" sentences if a non-elected chairman

of a Parole Board, which is made up of people under civil service, can overrule 190 trial judges?

Again, this is a problem the legislature should face and resolve.

The legislature has many options open to it. It could look at legislation such as that sponsored by United States Senator Edward Kennedy of Massachusetts in this session of the Congress which calls for guidelines created by a Sentencing Commission.[1] Under such a system the judge is expected to follow the guidelines, if he sentences outside the guidelines he must explain his reason. If he sentences below the guidelines the state may appeal. If he sentences above the guidelines the defendant may appeal.

On June 27, 1983, the local press carried a story of a man accused of committing rape in Dane county in 1982. He was arrested in California, charged with a rape committed there recently. In 1974, that man had been sentenced in Milwaukee to ten years for a rape committed there. But he was released on parole after serving only two years of that ten year sentence! No amount of "sentencing guidelines" can change a system where the judges are second guessed by the chairman of the parole board.

---

[1] As Senator Kennedy pointed out:

"Under this bill, determinate sentences, announced at the outset will tell the offender and society the actual prison time that will be served.

"With fixed sentences the current system of parole release will be eliminated. . . .

"The reforms needed to achieve a workable, rational sentencing system are neither too complicated to legislate, nor too difficult to implement.

"The legislation . . . clearly articulates the purpose of sentencing, establishes a sentencing commission to develop guidelines for sentencing, *abolishes parole* and provides for appellate review of sentences which are outside the guidelines . . ." (Release dated March 3, 1983) (Emphasis added.)

The legislature is the one branch of our tripartite system of government that can begin to cope with the problems we all face with trying to make sense out of sentencing.

As Senator Kennedy pointed out in referring to the need for sentencing reform:

"National security begins at home. It will do no good to arm America to the teeth against enemies abroad while losing the war at home against enemies within." (Release of March 18, 1983).

Change is long over due.

I am authorized to state that JUSTICE LOUIS J. CECI joins this concurring opinion.

BEILFUSS, C. J., HEFFERNAN, J. and ABRAHAM-SON, J. *(dissenting)*. The per curiam opinion of this court mandated today denies the petition of the Advisory Committee for Wisconsin Sentencing Guidelines Project which requests that this court mandate the use of the felony sentencing guidelines developed by the advisory committee. Because we believe that the adoption of the guidelines on an experimental basis is a valid attempt to improve our sentencing system which is one of the most critical stages of the criminal process, we dissent.

The majority rejects the guidelines for several reasons. While we agree that the guidelines are not a perfect and fool-proof method of reducing unwarranted sentencing disparity, we do not believe the majority's reasons for rejecting the guidelines are sufficient to terminate what we believe to be a valid experiment in improving our system of sentencing.

First, the majority states that no need for an attempt to improve the sentencing process has been "satisfactorily established." (*Supra*, p. 690) The majority is apparently oblivious to the well-publicized dissatisfaction with the

overall sentencing by individual judges by a meaningful portion of the people of this state. This dissatisfaction has been evidenced in a number of ways: there have been at least three recall elections to remove judges because of sentencing decisions (one successful, two unsuccessful); innumerable media editorials; and a multitude of bills presented to the legislature. Further, while the research conducted by the advisory committee revealed that there is no substantial disparity in the sentences imposed, there are at least some that have come to this court's attention. *Ocanas v. State,* 70 Wis. 2d 179, 233 N.W.2d 457 (1975), (two persons involved in same criminal act, one received a two-year sentence while the other received a twenty-year sentence). We believe the use of sentencing guidelines can go far to dispel this public dissatisfaction.

Another basis upon which the majority rejects the guidelines is that their imposition "would constitute an unwarranted intrusion into the authority and discretion of the sentencing judges." (*Supra,* p. 690) This simply is not so. Nor would the adoption of the guidelines by this court create, as the majority suggests, "presumptively appropriate sentences." The guidelines merely set forth sentencing averages based upon the factors in the matrix. No judge is directed as to the particular sentence to be imposed. Rather, the trial judge without penalty, sanction or criticism may impose a sentence of greater or lesser severity than the one recommended by the proposed guidelines. Trial judges would retain all of the discretion and authority they presently possess to impose the sentence each individual judge believes to be appropriate to the case within the legislatively determined limits. The proposed rule for an eighteen month trial period would only require the sentencing judge to indicate his or her reasons for going over or under the sentence suggested by the guidelines. This is not a substantial departure from the present obligation of the sentencing judge be-

cause under *McCleary v. State,* 49 Wis. 2d 263, 182 N.W.2d 512 (1971), the sentencing judge must set forth the reasons that formed the basis of his or her discretion.

The majority also objects to the use of the guidelines on the ground that prescribing criminal penalties is for the legislature, not this court. We believe as strongly as the majority that the legislature must set the limits within which a sentence may be imposed, but under the indeterminate sentencing system adopted by the legislature trial judges have the authority and the duty to exercise discretion within the limits set by the legislature. The proposed guidelines are merely an aid to this legislatively granted sentencing discretion vested in the trial judge. The guidelines do not and can not in any way affect the right of the legislature to fix the limits of the penalties to be imposed.

The majority also denounces the proposed guidelines on the ground that they are "nothing more than a compilation of the average felony sentencing experience," rather than establishment of what the appropriate sentence length should be. (*Supra,* pp. 690, 699) This is inconsistent with the majority's position that it is not for this court to set "presumptively appropriate sentences." More importantly, we believe that informing trial judges of the collective wisdom of their colleagues in similar sentencing circumstances would be an important aid in exercising sentencing discretion.

We find it significant that the hearing conducted by this court on the petition for the adoption of the guidelines was well publicized, yet not one person appeared in opposition to the petition. Further, the court received only very minimal written opposition to the adoption of the guidelines.[1] Significantly, none of the judges who

[1] In fact, many of the parties who originally expressed criticism of the guidelines reversed their position and supported their adoption before the hearing was held.

have used the guidelines on a voluntary basis appeared against the petition. Several advocated adoption.

Even the majority in its denunciation of the guidelines recognizes the value of gathering and distributing statistical information on sentencing to trial judges for use in imposition of sentences and thus directs the Director of State Courts to collect and distribute such information. Based on the well-recognized value of such information, we believe this approach is inappropriate.

Article VII, sec. 3 (1) of the Wisconsin Constitution, which was adopted by an overwhelming majority of the people of Wisconsin in 1978 as part of the court reorganization, not only gave this court the *authority* to superintend and administer all the courts of this state, but imposed the *duty* on us to do so. We believe, pursuant to this constitutionally mandated duty, this court should adopt, on an experimental basis, the proposed rule, mandating the use of the guidelines in order to attempt to deal with problems of sentencing disparity and adequacy which has concerned so many of the citizens of this state. Adoption of this rule would then be subject to review by this court following the eighteen-month trial period, and the court could then amend, accept or reject the guidelines based on actual experience, rather than stopping the experiment in its infancy before the evidence on its effectiveness has been evaluated.

The goal of a sentencing system should be to persuade the judiciary, the persons sentenced and the public that justice, through sentencing, is the result of a rational and just process rather than the result of blind luck. We should pursue every available avenue to improve this system and the felony sentencing guidelines may be one way to improve it.