IN the MATTER OF JUDICIAL ADMINISTRATION:
FELONY SENTENCING GUIDELINES.

Supreme Court

*Filed August 29, 1984.*
(Also reported in 353 N.W.2d 793.)

PER CURIAM. The legislature, by enacting 1983 Wisconsin Act 371, has authorized the supreme court to promulgate rules for sentencing guidelines for use by Wisconsin judges in sentencing convicted felons if we choose to do so. If we do not, the statutory authority to promulgate sentencing guideline rules passes to a sentencing commission attached to the Wisconsin Department of Administration.

The guidelines, which are to be based primarily on the felony sentences imposed by judges throughout the state in recent years rather than on what could be considered the correct or appropriate sentence for a particular crime under a given set of facts, are to set forth recommended sentence lengths for terms of confinement expressed in ranges of months and indicate the likelihood that the offender would be placed on probation or incarcerated.[1]

---

[1] Section 14, ch. 371, creating sec. 973.011, Stats. 1983–84. The guidelines are to include consideration of previous criminal history, status relating to incarceration, probation, parole or pretrial re-

When imposing sentence, courts will be required to take the sentencing guidelines into consideration and, if they impose a sentence not in accord with the guidelines, state on the record their reasons for deviating from the guidelines. For the reasons set forth below the court declines to exercise this statutory authority to promulgate felony sentencing guidelines.

One year ago this court was asked to mandate, by rule, the use of felony sentencing guidelines in all state trial courts for an 18-month period. At that time the court concluded that it was inappropriate to order the use of felony sentencing guidelines for the following reasons:

"No need has been satisfactorily established to justify the court's requiring the statewide use of the felony sentencing guidelines; our imposition of the guidelines on the trial judges throughout the state would constitute an unwarranted intrusion into the authority and discretion of the sentencing judges; prescribing penalties for criminal offenses is a matter of legislative, not judicial, policy; our promulgation of the guidelines and our order that they be used by all judges in the state would suggest that the court is prescribing presumptively appropriate sentences, which we are not prepared to do; the proposed guidelines are nothing more than a compilation of the average felony sentencing experience in the state since 1977." *In the Matter of Implementation of Felony Sentencing Guidelines,* 113 Wis. 2d 689, 690, 335 N.W.2d 868 (1983).

No circumstances have been presented to us to cause us to reach a different conclusion at this time, and we accordingly decline to exercise the authority conditionally conferred on us by the legislature to promulgate felony sentencing guidelines. We continue to recognize, however, that statistical information on felony sentencing in the state, which the court directed to be disseminated to Wisconsin judges by the director of state courts, is a valuable judicial tool, especially for those judges new to

---

lease, the severity of the offense, and mitigating, aggravating and other factors to be considered in sentencing. Sections 973.011(2), (3).

the trial court and for those who have been newly assigned to the felony bench as a result of judicial rotation.

In the course of our deliberations last year, we considered a January 31, 1983, report of the Advisory Committee for the Wisconsin Felony Sentencing Guidelines Project, which concluded that there was no unjustified disparity in sentencing in Wisconsin courts, based on the results of a study conducted from late 1977 to early 1979. No facts have been presented to us to indicate that significant sentencing disparity has occurred since then.

If there is disparity in the length of time being served, that is not the result of disparity of sentencing but is the result of the power vested in the Parole Board to authorize early release. Convicted felons continue to receive discretionary paroles and are being released from incarceration prior to their mandatory release dates set by statute. The decision to grant discretionary parole belongs to the chairman of the Parole Board, upon authority delegated from the secretary of the Department of Health and Social Services (DHSS). One-half of the inmates released prior to serving the full sentence imposed on them by the sentencing judge are placed on parole by decision of the DHSS secretary, the secretary's designee or the Parole Board chairman. *In the Matter of Implementation of Felony Sentencing Guidelines, supra,* fn. 2 at p. 694, Day, J., concurring opinion, 709–710.

Under the present legislative system of indeterminate sentencing,[2] trial judges have discretion to determine appropriate sentences for particular offenses. Imposing sentencing guidelines would interfere with the exercise of that discretion. The sentencing judge is in the best

---

[2] For example, the statutory penalty for armed robbery is specified as "imprisonment not to exceed 20 years," secs. 943.32, 939.50, Stats. Thus, the sentencing judge has the discretion to sentence a convicted armed robber to a term of anywhere from one to twenty years; the sentencing judge may also withhold sentence or impose sentence and stay its execution and, in either case, place the convicted felon on probation, sec. 973.09(1).

position to evaluate the circumstances of each case in making a sentencing determination, and we refuse to intrude on that discretion beyond continuing to require that each judge make a record setting forth the factors considered in imposing a sentence in order to provide evidence on review that sentencing discretion had been properly exercised and that the sentence imposed was the product of the exercise of that discretion. *McCleary v. State*, 49 Wis. 2d 263, 182 N.W.2d 512 (1971).

We have identified the three primary factors to be considered by a trial court in imposing a sentence: ". . . the gravity of the offense, the character of the offender, and the need for protection of the public." *Elias v. State*, 93 Wis. 2d 278, 284, 286 N.W.2d 559 (1979). Other factors we have recognized as properly considered in sentencing are:

"A past record of criminal offenses, a history of undesirable behavior patterns, the defendant's personality, character and social traits, the results of a presentence investigation, the vicious or aggravated nature of the crime, the degree of the defendant's culpability, the defendant's demeanor at trial, the defendant's age, educational background and employment record, the defendant's remorse, repentance and cooperativeness, the defendant's need for close rehabilitative control, the rights of the public, . . . the length of pretrial detention. Citations omitted." *State v. Tew*, 54 Wis. 2d 361, 367–68, 195 N.W.2d 615 (1972).

We do not find that the Wisconsin felony sentencing experience is sufficiently relevant to require a court to consider it and state on the record its reasons for deviating from sentencing guidelines based on that experience.

It is apparent from the relevant factors to be considered in imposing sentence that no two convicted felons stand before the sentencing court on identical footing. The sentencing court must assess the crime, the criminal, and the community, and no two cases will present identical factors.

"It is not the philosophy of modern criminal law that the punishment fit the crime alone and that for every violation of a particular statute there be an identical sanction . . . it is essential that a sentencing court consider the nature of the particular crime, *i.e.,* the degree of culpability—distinguishable from the barebones legal elements of it—and the personality of the criminal. The interests of both society and the individual must be weighed in each sentencing process." *McCleary v. State, supra,* 271.

Neither the interests of the individual being sentenced nor those of the community in which that individual lives are susceptible of accurate assessment in terms of statistical data gathered from other sentencing courts in the state. While each convicted felon is an individual deserving of individual treatment at sentencing, the interests of the public, too, will vary according to the particular community in which the crime was committed, the capacity of the community to rehabilitate the criminal, and the needs of that community for protection from that type of criminal activity.

Under the indeterminate sentencing system which has been established for this state by the legislature, the individuality of the crime, the criminal, and the community demands that an individual sentencing determination be made in each case. The sentencing court must consider specified factors in imposing sentence, but it must retain the discretion to impose an appropriate sentence based on that consideration. "Giving consideration to various relevant factors does involve a weighing and balancing operation, but the weight to be given a particular factor in a particular case is for the trial court, not this court, to determine." *Cunningham v. State,* 76 Wis. 2d 277, 282, 251 N.W.2d 65 (1977). We will not interfere with the exercise of that discretion by requiring judges to consider how convicted felons have been treated in other Wisconsin courts and, further, by requiring sentencing courts to articulate their reasons for imposing

sentences which do not conform to those recommended by guidelines based on sentencing experience in the state. Judicial review of a judge's exercise of sentencing discretion is available in the appellate courts to prevent arbitrariness, capriciousness and unjustified disparity, but even that review "must be made in light of the strong policy against interference with the trial court's discretion in passing sentence." *State v. Killory,* 73 Wis. 2d 400, 408, 243 N.W.2d 475 (1976).

We recognize that sentencing is a matter of legislative policy. *Drewniak v. State, ex rel. Jacquest,* 239 Wis. 475, 1 N.W.2d 899 (1942). The legislature determines what constitutes a crime in Wisconsin and establishes maximum penalties for each class of crime. It is for the legislature, then, to decide whether and to what extent the sentencing court's discretion should be limited.

The legislature stated its intent in authorizing this court to promulgate felony sentencing guidelines as follows:

"The legislature finds that sentencing of criminal defendants should be even-handed and consistent. Guidelines for use by judges are useful to accomplish this purpose. Under our criminal justice system, the legislature generally establishes the minimum and maximum sentences for crimes, and judges use their discretion to determine, within the limits established by the legislature, what particular sentence is appropriate in a particular case. As this exercise of judicial discretion is so directly related to the establishment of sentencing guidelines, it is most appropriate that the supreme court promulgate rules for sentencing guidelines. Only if the supreme court declines to do so will the legislature establish an independent sentencing commission to establish sentencing guidelines." Section 751.13(1), Stats.

We agree that consistency in criminal sentencing is desirable, and we conclude, in the absence of facts to the contrary, that the existing system is accomplishing that goal. The legislature considers it most appropriate that

this court promulgate rules for sentencing guidelines because it sees a direct relation between the establishment of the guidelines and the exercise of judicial discretion. We disagree; it is precisely because the determination of what constitutes an appropriate sentence in a particular case involves the exercise of judicial discretion that we decline to promulgate guidelines and thereby encroach on that discretion.

The recent statutory authority for this court to promulgate rules providing sentencing guidelines is conditioned on the court's issuing an order on or before September 1, 1984 directing the director of state courts to continue the study of sentencing guidelines initiated by the sentencing guidelines advisory committee and to begin preparation of proposed rules providing sentencing guidelines. As the court will not issue such an order, the statutory authority to promulgate sentencing guideline rules passes to a sentencing commission attached to the state department of administration. Section 751.13, Stats.

WILLIAM A. BABLITCH, J. (concurring). I write to emphasize three points: 1) sentencing guidelines will be established in this state regardless of what this court does; 2) the power to establish penalties for criminal offenses rests with the legislature, not the judiciary, which is a distinction too frequently (but understandably) blurred in the minds of the public; and 3) notwithstanding the establishment of sentencing guidelines, the principles of *McCleary* will remain good law.

## I.

The issue is not *whether* sentencing guidelines will be established in this state. The legislature in enacting 1983 Wis. Act 371 decided that question: sentencing guidelines will be established regardless of what this court does.

The only issue is *who* will establish these guidelines, the supreme court working with a legislatively created sentencing council, or an independent commission created by the legislature. Regardless of who establishes the guidelines and promulgates the rules implementing them, the end result will be largely the same. The reason that this is so is that the sentencing commission will be made up of precisely the same 17 members as the sentencing council, the members of each body will be appointed by the same people, the geographic, racial, social and gender diversity will be the same, the governor will appoint the chairperson in either case, the basis upon which any rules are promulgated will be the same,[1] and, perhaps most importantly, the use of the guidelines by the sentencing judges will be precisely the same.[2]

In 1983, this court concluded that it was inappropriate to order the use of sentencing guidelines. In a dissent, Justices Beilfuss, Heffernan, and Abrahamson urged the adoption of felony sentencing guidelines, ". . . (b)ecause we believe that the adoption of the guidelines on an experimental basis is a valid attempt to improve our sentencing system. . . ." *In the Matter of Implementation of Felony Sentencing Guidelines,* 113 Wis. 2d 689, 711, 335 N.W.2d 868 (1983).

The desires expressed by those dissenting justices for sentencing guidelines have been accomplished by the enactment of 1983 Wisconsin Act 371. It is now for this

[1] Section 5, ch. 371, creating sec. 15.105(17), Stats. 1983–84.

[2] Section 14, ch. 371, creating sec. 973.012, Stats. 1983–84, states: "Use of guidelines by judges. Beginning on the first day of the 18th month commencing after the effective date of this section (1983), a sentencing court, when imposing a sentence, shall take the guidelines established under s. 973.011 into consideration. If the court does not impose a sentence in accordance with the recommendations in the guidelines, the court shall state on the record its reasons for deviating from the guidelines. There shall be no right to appeal on the basis of the trial court's decision to render a sentence that does not fall within the sentencing guidelines."

court to decide who should be in charge of establishing the guidelines and promulgating the rules to govern them, not whether sentencing guidelines should be established.

## II.

The power to establish penalties for criminal offenses rests with the legislature, not the judiciary. For too long that distinction has been blurred in the mind of the public, due in no small part to the system of indeterminate sentencing and parole established by the legislature. As far back as 1971, this court in *McCleary v. State,* 49 Wis. 2d 263, 182 N.W.2d 512 (1971) pointed out the confusion this creates:

". . . as sentences are now imposed, the public is misled into thinking that a trial judge has safely isolated a dangerous criminal from society when, in fact, all he has done is to turn him over to 'experts' for analysis and treatment, and possible early release. This may be good penology and good sociology, but it does not comport with fundamental honesty in dealing with the public—at least if we take seriously the attorney general's argument that the judicially imposed sentence is irrelevant." *Id.* at 288, n. 4.

That confusion existed in 1971, and continues to exist today. The legislature has maintained indeterminate sentencing by maintaining the same system of parole. It has not enacted minimum mandatory sentencing. It has not given over to the judiciary the responsibility for establishing penalties for criminal offenses. Because of the availability of parole, the sentencing court has no power to determine the length of sentence actually served below the maximum imposed despite the public's belief that this power rests in the sentencing court. Until the legislature chooses to change that system, I do not believe this court should be a party to a procedure which will continue to mislead the public as to which branch of

government is responsible for establishing criminal penalties and the actual sentence served by a convicted defendant. If this court accepted the legislative invitation and promulgated the sentencing guidelines, I believe we would simply continue to add to this confusion.

## III.

It is important to note that the guidelines, once established, will be just that: guidelines, not edicts. Unless and until the legislature does away with indeterminate sentencing or adopts a system of minimum mandatory sentences for certain crimes, the responsibility of the trial court will continue to be to sentence within the range of the penalties established by the legislature. The responsibility of this court, firmly established in *McCleary*, will continue to be to review the propriety of those sentences on appeal.

*McCleary,* decided in 1971, will remain good law even after the sentencing guidelines and the rules promulgating them have been established.

" 'The sentence imposed in each case should call for the minimum amount of custody or confinement which is consistent with the protection of the public, the gravity of the offense and the rehabilitative needs of the defendant.' " *McCleary, Id.* at 276 (citing with approval American Bar Association Project, Approved Draft, Standards Relating to Appellate Review of Sentencing, page 14, sec. 2.2).

In establishing the principle of appellate review of sentences, this court provided:

" 'The sentencing judge should be required in every case to state his reasons for selecting the particular sentence imposed. Normally, this should be done for the record in the presence of the defendant at the time of sentence. In cases in which the sentencing judge deems it in the interest of the defendant not to state fully the

reasons for the sentence in the presence of the defendant, he should prepare such a statement for transmission to the reviewing court as a part of the record.' " *Id.* at 281–82 (citing with approval American Bar Association Project, Approved Draft, Standards Relating to Appellate Review of Sentencing, page 11, sec. 2.3 (c)).

In *McCleary,* this court stated the objectives of appellate review of sentencing, quoting from the American Bar Association Approved Standards of Review of Sentences:

" '(i) to correct the sentence which is excessive in length, having regard to the nature of the offense, the character of the offender, and the protection of the public interest;
" '(ii) to facilitate the rehabilitation of the offender by affording him an opportunity to assert grievances he may have regarding his sentence;
" '(iii) to promote respect for law by correcting abuses of the sentencing power and by increasing the fairness of the sentencing process; and
" '(iv) to promote the development and application of criteria for sentencing which are both rational and just.' " *Id.* at 274–75.

This court has consistently adhered to *McCleary* since 1971, and nothing in 1983 Wisconsin Act 371 will change that.

In conclusion, these guidelines may well prove to be a valuable sentencing tool. But it is neither wise nor necessary for this court to promulgate them for the reasons set forth in this concurring opinion.

I am authorized to state that JUSTICES ROLAND DAY, WILLIAM CALLOW, DONALD STEINMETZ and LOUIS CECI join in this concurrence. While all of the justices concurring agree with the substance of the per curiam opinion, including this author, all agree that the additional comment in this concurrence is appropriate.

HEFFERNAN, C.J. (dissenting). I dissent for all the reasons set forth in the dissenting opinion of Chief Justice Beilfuss, Justice Abrahamson, and myself at page 711 of *In re Felony Sentencing Guidelines*, 113 Wis. 2d 689, 335 N.W.2d 868 (1983).

Additionally, I am obliged to add that the majority in the instant case continues to fail to appreciate the nature of sentencing guidelines. Sentencing guidelines are not designed to, and would not, operate to limit or restrain the sentencing discretion of a trial judge. Their purpose is to aid the trial judge in the exercise of that discretion. The legislation specifically provided that failure to follow guidelines does not establish a right of a convicted felon to appeal. Appeals would continue to be judged on the basis of fidelity to the standards of *McCleary*—not on whether a guideline was followed. Guidelines are not to be controlling.

Both the majority opinion and the concurrence rely heavily upon *McCleary v. State*, 49 Wis. 2d 263, 182 N.W.2d 512 (1971), an opinion I authored for this court. The concurring opinion correctly appreciates that *McCleary* does set limits upon trial court discretion, because it requires a judge, in fact, to exercise discretion and to demonstrate on the record that such discretion has been exercised on the basis of pertinent facts and on a correct understanding of the law. Thus, sentencing discretion already has been given focus and definition by the *McCleary* guidelines. *McCleary* was, however, but a feeble, though significant, first step in bringing some rationality to sentencing discretion.

It is my belief that the widespread use of the *McCleary* methodology has made sentencing in Wisconsin more rational than it otherwise would be. But what the *McCleary* methodology fails to do is to give a particular trial judge the benefit of the accumulated wisdom of other trial judges in the exercise of sentencing discre-

tion in similar cases. In *McCleary*, we expressed the hope that an expressed rationale for a particular sentence in articulated circumstances would, over a period of time, result in the development of a common law of sentencing which takes into rational consideration all of the factors relating to the crime and to the adjudged felon.

*McCleary* was a successful first step, but the goal of the philosophy behind *McCleary* has not reached fruition. Information which has been garnered by the *McCleary* technique over the years can only be put to appropriate discretionary use by judges by first organizing the information in respect to the past judicial exercise of sentencing discretion in a manner that the reasoning of other judges may be used as guidelines by a sentencing judge. This information constitutes a body or consensus of judicial decisions that may be used, in a sentencing judge's discretion, in the same way—although not with binding precedential effect—that any common law judge uses and relies upon the decisions of other judges who have addressed the same problem. By consulting the various factors that make up the guidelines, the sentencing judge can exercise personal discretion to decide whether or not to follow the guidelines. A statement of why the judge might not in a particular case follow a guideline would not differ one whit from what the trial judge is required to set forth under the *McCleary* methodology.

Any judge knows that sentencing judges confer with one another and compare the factors which led one judge to give a particular sentence while another, under differing factors, may have imposed a different sentence for the same statutory offense. Thus, "sentencing guidelines" and their constituent factors, in an informal sense, have always been used to assist a trial judge in exercising discretion. Why not compile that past experience so all judges may have ready access to the information that

has heretofore been informally and laboriously gleaned? This is exactly the service that will be rendered by the guidelines.

While one dissenting opinion indicates that the decision made by the court was faulty because the court failed to provide a mechanism for citizen participation in evaluating the merits of the recent legislation, I find this statement incorrect and irrelevant. The court held a public hearing on the question of adopting sentencing guidelines only a year ago, in 1983. Extensive reports were filed, and the court gave its careful consideration to the plethora of material available to it. We have been fully exposed to the pros and cons of the efficacy of sentencing guidelines.

The present matter presents a closely related, though slightly different, aspect of the problem—what entity shall assume the responsibility for establishing guidelines. That question was, however, addressed in the court's consideration of 1983 (see concurring opinion of Justice Day, at 710). Hence, the legislative option was understood by the court then.

After a public hearing was held in 1983, at which all were free to attend and speak, the rejection in 1983 of the court-mandated guideline experiment was a statement of the majority's position that guidelines, if they were to be undertaken, would be by legislative action, not by a court decision. Thus, the court decision to rely on a legislative solution was made over a year ago and on the basis of full information. There is nothing new in the present matter, save that the legislature created an opportunity for the court to reconsider its earlier position.

Additionally, I have found no reluctance on the part of lawyers, public officials, or those concerned with sentencing procedures to express their opinion on this matter. Nor have I noticed any reluctance on the part of any citizen to contact any member of this court in respect to

any nonadjudicative, legislative, or rule-making decision. The author of this dissent received numerous communications from concerned persons expressing a position on the guideline legislation. These communications were available to all members of the court. These communications, which included a statement by all the chief judges of the state, formally requested this court to assume the responsibility for further study and implementation of sentencing guidelines. No writer addressing the author of this dissent favored the formulation of guidelines under the aegis of the legislature. This court had a clear statement of where the sentiment of the concerned public lay—to have the court, not the legislature, implement the guideline study.

I cannot, on the ground that we have failed to set up a redundant mechanism to elicit the same information we had acquired less than a year before, absolve my brethren who have spurned the express wish of those who appeared before us in 1983 and those who have communicated with the court or its members in respect to the question before us. To assert that in some way another hearing or information-gathering procedure would have elicited more meaningful citizen expression of opinion, would have contributed to our store of knowledge, or would have changed the result in the present matter is irrelevant fantasy.

While I disagree with my brethren who are in the majority in this proceeding, I cannot express any great alarm at the upshot of the matter or with their resolution of the problem. True, we have avoided a responsibility which optimally should be that of the court. True, we have washed our hands of the responsibility for a difficult and tedious task. True, we have submitted a "white paper," appropriate or inappropriate, stating that we as a court system are to be absolved from any responsibility for erroneous terms of incarceration, and have stated that the fault is not ours but that of the parole board or

the legislature. True, we have acted, in my opinion, inconsistently with our position on judicial independence by refusing to exercise what I consider to be a judicial function when the legislature gave us the opportunity of rectifying our erroneous failure to exercise our powers as memorialized for posterity in the court's opinion of July 1, 1983. Yet, by our present decision, we will have sentencing guidelines, although not set up under the aegis of this court.

As a practical matter, there will be no difference in the operation of our courts whether we set up the guidelines or the legislature does so. I predict that ten years from now there will be substantial satisfaction with the use of sentencing guidelines. Happily, in any event, we will be using a device which will aid our trial judges in the exercise of judicial sentencing discretion and not impede or hinder it. While I would much have preferred that the court clean its own augean stables, I welcome in this instance the legislature's action, which now has been given this court's imprimatur by the decision of the majority.

Nevertheless, it is my belief that the task could better have been done under the supervision of this court. To do so would comport with our constitutional duty to administer the courts. Art. VII, sec. 3(1), Wisconsin Constitution. To the extent we have neglected that constitutional duty, the legislature has determined, correctly under the circumstances, to remedy our omission. The important fact now is that sentencing guidelines will be responsibly established. These guidelines can only have the salutary effect of aiding trial judges in their intelligent exercise of discretion. While I dissent from the majority, the end result—the establishment of sentencing guidelines by the legislative direction—would ensue under the statute even if the court at this late juncture had not acted at all. In the absence of affirmative action by the court seeking the opportunity to undo our error of a year ago, the opinions filed today are but a tempest

in a teapot. We will have sentencing guidelines! Undoubtedly, they will be good ones, which will substantially aid beleaguered trial judges, result in the more carefully articulated use of the *McCleary* standards, and will tend to ensure that criminals who are similarly situated will be treated similarly, irrespective of where in the state sentencing takes place. Trial judges will be able to use the accumulated wisdom and experience of their peers. I applaud the legislature's wisdom though I deplore this court's omission to act timely and affirmatively on an aspect of justice that, initially at least, falls within this court's constitutionally prescribed duty.

SHIRLEY S. ABRAHAMSON, J. (dissenting). I conclude that this court errs in declining to exercise the powers set forth in chapter 371 of the 1983 Laws. I further conclude that the court has erred in failing to hold a public hearing and in failing to solicit communications from interested persons before reaching its decision.

In 1983 a majority of the justices refused to adopt experimental court-mandated sentencing guidelines and left the issue to the legislature. See *In the Matter of Implementation of Felony Sentencing Guidelines,* 113 Wis. 2d 689, 711, 335 N.W.2d 868 (1983).[1] In 1984

---

[1] The 1983 petition had asked the court to promulgate a rule adopting, for an 18-month trial period, guidelines developed by the Advisory Committee for the Wisconsin Felony Sentencing Guidelines Project. The petition presented two principal issues: whether any sentencing guidelines should be adopted by the court in the absence of legislation and, if so, what the sentencing guidelines should be.

Chapter 371 has settled both issues. The legislature decided that the court should, if it is willing, adopt guidelines. The legislature decided that indeterminate sentencing should be retained and that guidelines should be adopted to structure—not eliminate—judicial discretion and to aid trial judges in reaching a fair and equitable sentencing decision in each case.

In 1983 the majority of the court was concerned with a conceptual and practical problem it perceived in the proposed guide-

the legislature has mandated sentencing guidelines and related procedures. The per curiam and concurring opinions do not really address the issue presented to this court by chapter 371 of the 1983 Laws. Rather they again address issues that were decided in response to the 1983 sentencing guidelines petition.

The issue that chapter 371 presents to us is this: Who should perform the sentencing tasks mandated by the legislature, this court or an administrative agency attached to the executive branch? Under chapter 371, either this court (with the advice of a sentencing council) or a sentencing commission shall formulate sentencing guidelines and shall conduct and coordinate other functions, such as collecting, developing, and maintaining statistical information relating to sentencing practices and other dispositions of criminal complaints, developing instructional programs for judges, and explaining sentencing practices and rules to the public.

While the sentencing council or the sentencing commission would be of similar composition, that is, certain described persons appointed by the same designated appointing agency, there is a significant difference in the level of responsibility of each entity. If we exercise the authority granted us, this court, not the sentencing council, would make the ultimate decisions on the sentencing guidelines and on the other functions; the sentencing council would act as an advisory board to this court. In contrast, if the court does not elect to exercise the authority granted under chapter 371, the sentencing commission formulates the guidelines and performs the other sentencing tasks.

lines, namely, that the guidelines had been constructed solely from an empirical perspective based on past sentencing decisions rather than from a normative perspective. See *In the Matter of the Implementation of Felony Sentencing Guidelines,* 113 Wis. 2d 689, 690, quoted at p. 199 of the per curiam opinion. See note 2, *infra,* for an explanation of the legislature's decision on this issue.

The implications of deciding whether this court shall play a major role in formulating sentencing guidelines and in performing the other functions prescribed by the legislature are far reaching. The legislature has given the guidelines entity leeway in deciding how to perform the tasks within the general standards and limitations set forth by the legislature on the formulation of guidelines. See sec. 14, ch. 371, sec. 973.011, Stats.[2] The choice of the entity may therefore significantly affect the type of guidelines ultimately adopted and their acceptance by the public and the trial courts.

Furthermore, the choice of entity raises issues such as the separation of powers, the administration of the judicial system, and the proper balance in allocating discretionary power among the legislative, executive, and judicial branches which share responsibilities in the sentencing process.

I.

This court's decision affects litigants, trial and appellate courts, the bar, and the public. An issue of this import should not be decided without the benefit of public discussion and without soliciting the widest possible variety of viewpoints.[3] Unfortunately the court held no

---

[2] The legislature has stated that the guidelines shall be based primarily but not solely on empirical data. Other considerations set forth by the legislature include the felon's previous criminal history and mitigating and aggravating factors. Sec. 14, ch. 371, sec. 973.011, Stats. The legislature relies on the sentencing guidelines entity to weigh the criteria.

The legislature contemplates that the court will, in preparing the guidelines, continue its initial sentencing study, but the legislature does not contemplate that the court will necessarily adopt the sentencing guidelines proposed to the court in 1983. If the court were to promulgate guidelines it would have more than 2 years to do so. Sec. 10, ch. 371, sec. 751.13, Stats.

[3] For a discussion of the values of access and accountability in a court's nonadjudicative functions, see Grau, *Judicial Rulemak-*

public hearing and did not solicit written communications before reaching its decision. In last year's public hearing the persons appearing did not have the opportunity to address the issue presented by chapter 371, and the membership of the court has changed since that hearing. There was time to hold a hearing. I think the court should have done so.

I received a few letters in connection with chapter 371. All favored the court's exercise of the powers under the legislation. Some persons inquired whether a formal or informal meeting with the court was possible to discuss the issue. No such meeting was held. Apparently communications about chapter 371 were sent to some individual justices. Apparently no communications were sent to the clerk of court and accordingly there is no court file relating to chapter 371 and sentencing guidelines.

I believe many persons were interested in communicating with the court about chapter 371 but did not do so. Some were unsure of the propriety of discussing the merits of this matter with the court as a whole or with individual justices. Others were unsure of the propriety of discussing even the possibility of the court scheduling a public hearing. Had there been an opportunity for oral or written communication with the court, numerous persons might have become involved—trial judges, lawyers (including the attorney general, prosecutors, public defenders, lawyers in private practice, and law professors), legislators, police officers, members of the parole board, persons working in corrections and related fields, and lay persons (including victims, witnesses, and jurors) who are experienced or interested in the criminal justice system.

Our handling of the matter presently before the court illustrates a serious defect in this court's operating pro-

*ing: Administration, Access and Accountability* (American Judicature Society 1978).

cedures. While the statutes and Supreme Court Rules set forth a procedure for initiation of and participation in adjudicative matters and in sec. 751.12 rule-making proceedings, no procedure is established in the statutes, Supreme Court Rules, or in the court's recently issued internal operating procedures to enable the court to inform itself as to the merits of a nonadjudicative matter (outside sec. 751.12, Stats. 1981–82) and to enable interested persons to initiate court consideration of such nonadjudicative matters and make their views known to the court.[4]

This court, which has written so eloquently on the need for open government, ought to make its own processes as readily accessible to the public as circumstances permit. I urge this court, on its own motion or on petition of an interested party and after public hearing, to adopt and publish a procedure allowing public participation in nonadjudicative matters.[5]

---

[4] Lawyers have pointed out that the court has not provided a vehicle for amendment of the Supreme Court Rules that are not sec. 751.12 rules. See Communication to the Court from Frank L. Nikolay, President of the Clark County Bar Association, dated May 7, 1984.

Nor are there any published or unpublished rules to guide the justices in their own conduct when nonadjudicative matters are pending before the court. During my eight years on this court, I have discussed the question of the role of a judge in nonadjudicative matters with several of my colleagues on this court and with judges from other jurisdictions. Although I have not found a unanimity of opinion or practice among judges, I think there is a consensus that when a nonadjudicative issue is pending before the court a judge is permitted to listen to or read communications from persons who wish to address the issue, but a judge should not reveal either the views of the individual justices or the court's tentative or final vote on the matter before the court announces its ruling.

[5] For a procedure see sec. 37 of the Rules of Judicial Administration submitted to this court on October 2, 1978 by the Judicial Council by petition entitled In the Matter of the Promulgation of Rules of Judicial Administration for the State of Wisconsin. Un-

## II.

That the choice of the entity for sentencing guidelines is significant is apparent in the substantial body of scholarly writings and studies discussing this question.[6] There is, however, no consensus on a model entity to

fortunately sec. 37 was not adopted by this court; it provided a procedure for initiation of local judicial administrative rules by the chief judge or any other person and for solicitation of comments in writing or at a hearing.

[6] See, *e.g.*, Frankel, *Criminal Sentences: Law Without Order* 55, 118–123 (1973); III ABA Standards for Criminal Justice, ch. 18, 18–3.1—18–3.5 Sentencing Alternatives and Procedures (2d ed. 1980); Uniform Law Commissioners, Model Sentencing and Corrections Act sec. 3–110, 10 Uniform Laws Annot. Suppl. Pamphlet 1980–1983, p. 280 (1984); Senate Comm. on the Judiciary, Sentencing Reform Act of 1983, S. Rep. No. 223, 98th Cong., 1st sess. (1983), pp. 60–62; Rich, Sutton, Clear and Saks, *Sentencing by Mathematics: An Evaluation of the Early Attempts to Develop and Implement Sentencing Guidelines* 206–207 (Natl Center for State Courts 1982); Singer, *In Favor of "Presumptive Sentences" Set by a Sentencing Commission*, 24 Crime and Delinquency 401 (1978); Coffee, *The Repressed Issues of Sentencing: Accountability, Predictability, and Equality in the Era of the Sentencing Commission*, 66 Geo. L.J. 975 (1978); Tonry, *The Sentencing Commission in Sentencing Reform*, 7 Hofstra L. Rev. 315 (1979); Crump, *Determinate Sentencing: The Promises and Perils of Sentence Guidelines*, 68 Ky. L.J. 1 (1979–80); Ozanne, *Bringing the Rule of Law to Criminal Sentencing: Judicial Review, Sentencing Guidelines and a Policy of Just Desserts*, 13 Loyola U.L.J. 721 (1982); Zalman, *A Commission Model of Sentencing*, 53 Notre Dame Law 266 (1977); Spader, *Criminal Sentencing and Punishment: The Search for the Golden Zigzag*, 28 S.D.L. Rev. 1 (1982); Schwartz, *Options in Constructing A Sentencing System: Sentencing Guidelines Under Legislative or Judicial Hegemony*, 67 Va. L. Rev. 637 (1981).

For an extensive bibliography on sentencing guidelines, see Appendix B of the Report of the Wisconsin Felony Sentencing Guidelines Advisory Committee (Jan. 31, 1983), pp. 445–62, on file with the Clerk of the Supreme Court, State Capitol, Madison, Wis.

promulgate sentencing guidelines. The choice of entity in each jurisdiction depends on consideration of the existing sentencing process in the jurisdiction, on the constitutional powers of the legislature and the judiciary in the jurisdiction, and on balancing the advantages and disadvantages of various alternatives.

When the legislature establishes a system for sentencing guidelines, it has basically three choices: It can create guidelines itself by statutory enactment; it can delegate authority to the judicial branch to promulgate guidelines under general legislative standards; or it can create a specialized agency attached to the executive or judicial branch to which it delegates the authority under general legislative standards.

Under chapter 371 the Wisconsin legislature does not promulgate the guidelines by statutory enactment. The per curiam and concurring opinions imply that when the legislature delegates authority to formulate guidelines to the court or an administrative agency, it fails to live up to its obligation to fix penalties. I disagree. Legislative adoption of guidelines by statute is uniformly criticized. The legislature is not equipped to do the initial job of formulating guidelines and has little or no mechanism to monitor and modify a guideline system.[7]

The legislative preference, expressed in chapter 371, is to delegate the authority to this court.[8] The governor

---

[7] As originally adopted, chapter 371 provided that the legislature must approve each rule adopting guidelines. The governor vetoed this language, explaining that legislative enactment of each guideline would be inappropriate and "would delay indefinitely the implementation of sentencing guidelines. . . ." Governor's Veto Message, J. of the Assembly, April 25, 1984, pp. 1208–1209.

[8] See sec. 10, ch. 371, sec. 751.13(1), Stats. This delegation is similar to sec. 751.12, Stats. 1981–82, which has been approved by this court. The formulation of guidelines does not affect the substance of legislatively mandated maximum or minimum penalties but provides a procedure by which trial judges can formulate their sentencing decisions. Promulgation of procedural rules is

also urges this court to use the authority granted by chapter 371.[9] The legislature's and governor's fall-back position is that the authority be vested in an agency attached to the executive branch and subject to chapter 227, the Administrative Procedure Act.

The decision for this court is not an easy one. Formulating sentencing guidelines and performing the other functions set forth in chapter 371 will be a time-consuming, difficult, often controversial, and generally thankless job. Nevertheless, on the basis of my analysis of the existing Wisconsin sentencing procedure, the theoretical underpinnings of advisory sentencing guidelines, the published studies of experiments with sentencing guidelines, and this court's powers and duties under the judiciary article (article VII) of the Wisconsin Constitution, I conclude that the court ought to undertake the tasks in conjunction with the sentencing council.

While I am not saying that this court is uniquely qualified to establish guidelines and perform the additional tasks mandated by chapter 371, I do believe that the court's qualifications, when considered in the context of the legislature's and the governor's preference, and issues of institutional structure, comity, and efficiency make it the better choice. Furthermore, if the court exercised the powers under chapter 371 and, after further study, concluded that it should not promulgate sentencing guidelines, the court could relinquish its powers under chapter 371 without jeopardizing the legislature's objectives.[10]

---

traditionally the province of this court. This court has said, "[T]here is no constitutional objection to the delegation of [the power to adopt procedural rules] to the courts by the legislature." *In re Rules of Court*, 204 Wis. 501, 510, 236 N.W. 717 (1931).

[9] Governor's Veto Message, J. of the Assembly, April 25, 1984, p. 1208.

[10] The legislature provided that the members of the sentencing council would automatically become the members of the sentencing

If this court is to adhere to the principle that "sentencing is a matter of legislative policy," per curiam slip op. p. 7, and to the principle of comity, it should give great weight to the legislature's and the governor's preference that this court undertake the tasks set forth in chapter 371.[11]

If this court is to act consistently with principles of indeterminate sentencing, separation of powers, and accountability, it should undertake the tasks set forth in chapter 371.

In adopting advisory guidelines the legislature has retained this state's traditional indeterminate sentencing process whereby the ultimate sentencing decision is in the hands of the trial judge, with the trial judge's decision reviewable on appeal for abuse of discretion. Since sentencing remains a matter of judicial discretion, it is appropriate that the guidelines be promulgated by this court rather than by an independent agency attached to the executive branch.

The legislature's purpose in establishing sentencing guidelines is to assist the trial judge in exercising her or his discretion to ensure that sentencing of criminal de-

commission if the court did not complete the tasks; all rules or orders promulgated by the court relating to guidelines would remain in effect until modified or rescinded by the commission; all contracts the court entered into relating to the guidelines would remain in effect and be transferred to the commission. Consequently all the work and effort of the council and the court would not be wasted but rather would be continued by the commission without significant interruption. Sec. 15(2)(3), ch. 371.

[11] Although the majority opinions give lip service to the doctrine that the sentencing is a matter of legislative policy, the opinions are not willing to accept the legislative decision that there be guidelines. The opinions appear to conclude that the court should not play any role in the process of imposing sentencing guidelines, because sentencing guidelines would unreasonably interfere with the trial judge's exercise of discretion, because appellate review is adequate, and because the parole system undermines judicial discretion and confuses the public.

fendants will be "even-handed," "consistent," and "appropriate in a particular case." Sec. 10, ch. 371, sec. 751.13 (1), Stats. Implicit in the statement of legislative purpose is the realization that appellate judicial review alone has not proved adequate to structure judicial discretion and to avoid disparate, inconsistent, or unreasonably light or severe sentences in particular cases. Others have similarly concluded. See, *e.g.*, ABA, *Standards for Criminal Justice* ch. 20 (2d ed. 1980). In a recent case in the court of appeals, each of the three judges expressly or implicitly suggested that if there were to be meaningful appellate review of trial court sentencing decisions, the supreme court must reexamine the existing standards to be applied on appellate review. *State v. Lazaro Curbello-Rodriguez,* 119 Wis. 2d 414, 351 N.W.2d 758 (1984), pet. for rev. denied (Abrahamson, J., dissenting).

If this court formulates guidelines giving due deference to the advice of the sentencing council, the legislative objective of maintaining the existing distribution and balance of power among the executive, legislative, and judicial branches in the sentencing process would be achieved. The legislature wisely mandated that the council be composed of persons appointed by the governor, the legislature, and the court and representative of various agencies and persons who have an interest in sentencing. Both the council and the court should, of course, encourage public participation in their formulation of guidelines.

The court's exercise of the powers under chapter 371 comports with this court's interpretation of its constitutional powers and duties to exercise superintending authority and exclusive administrative authority over all courts independent of the executive and legislative branches. See Art. VII, sec. 3(1), sec. 4(3), Wis. Const.; *In re Grady,* 118 Wis. 2d 762, 348 N.W.2d 559 (1984); Governor's Veto Message, J. of the Assembly, April 25, 1984, p. 1209.

Unless the court exercises the powers under chapter 371 an agency which is not elected by the citizens and which is not accountable to the citizens will be making final policy decisions.

This court's experience and current administrative structure make it the most economical and efficient body to perform the tasks which the legislature has mandated.

First, this court has recently had experience with sentencing guidelines. We can build on the previous efforts of the trial courts, our administrative staff, and the Wisconsin Felony Sentencing Guidelines Advisory Committee in the use of an experimental system of sentencing guidelines.[12]

Second, this court has had experience in structuring the trial court's exercise of discretion, generally. A significant part of this court's appellate work is to establish guidelines giving effect to statutory standards to structure the exercise of trial court discretion.[13] Sentencing guidelines bring to the sentencing process a principle well established in various other parts of our legal system, namely, that discretion can be structured without being

[12] The Advisory Committee was established by the governor, funded by the Wisconsin Council on Criminal Justice, and endorsed by the judicial planning committee of this court. It operated from approximately October 1, 1980, through December 31, 1982. With the aid and assistance of administrative personnel of this court and the trial courts and Chief Justice Bruce Beilfuss, the Advisory Committee engaged in research, analysis, and system development work necessary to develop sentencing guidelines for certain felonies and then reviewed the operation of the guidelines. From July 15, 1981, through December 31, 1982, circuit judges in eight counties used the experimental sentencing guideline system distributed by the Advisory Committee.

[13] See, e.g., McCleary v. State, 49 Wis. 2d 263, 274–282, 289–90, 182 N.W.2d 512 (1971), and State v. Macemon, 113 Wis. 2d 662, 667–68, 335 N.W.2d 402 (1983) (guidelines as to exercise of sentencing discretion); Haugan v. Haugan, 117 Wis. 2d 200, 211–15, 343 N.W.2d 796 (1984) (guidelines as to maintenance and property division upon divorce).

eliminated. See Davis, *Discretionary Justice: A Preliminary Inquiry* (1977).

Third, the supplemental tasks of data collection and judicial and public education mandated by the legislature are simply an extension of functions already performed by the court.

The court presently requires trial courts to collect and transmit statistical data. The court's exercise of the authority granted in chapter 371 relating to data collection would localize data collection in one agency and avoid potentially duplicative or unreasonable requests on the already overburdened trial courts and clerk of courts.

The court requires judges to participate in judicial education programs, and the court's judicial education office develops and sponsors educational programs. The per curiam and concurring opinions demonstrate this court's interest in, and commitment to, helping the public understand the sentencing process. Yet the court is unwilling to accept the responsibility for public education set forth in chapter 371.

Furthermore, if the court supervised the operation of the guidelines, periodic formal and informal review and evaluation of the system could be undertaken easily through the court's existing communication system with the trial judges. The system includes the annual judicial conference, educational programs, mailings, and monthly meetings with the chief judges of the administrative districts.

Finally, I believe the court is the preferable entity because the court is best able to formulate sentencing guidelines with due consideration to the overall working of the criminal justice system and the connection between sentencing by the trial court and the larger system of discretionary powers in the criminal justice system.[14]

[14] Although the trial judge fixes and pronounces the sentence (subject to appellate review) within the legislatively established minimum and maximum sentences, other parties in the criminal

I regret that this court is foregoing the opportunity that chapter 371 presents for this court and the trial courts to work more closely with other agencies in the criminal justice system which play a role in sentencing.

Although for the reasons I have stated I prefer that the court exercise the authority granted it under chapter 371, my preference for the court does not mean that I have concluded that the public interest cannot be served by the sentencing commission. I believe that the commission can successfully promulgate guidelines and that this court, the trial courts, and court personnel across the state will cooperate with the sentencing commission fully to give the guidelines a chance to accomplish the legislature's purposes in establishing a guidelines system.

---

justice system exercise discretion which affects the real sentence: police, prosecutors, the parole board, and the division of corrections. The roles of these agencies and the courts are interdependent. Imposition of guidelines must consider the workings of all entities and the criminal justice system as a whole. The objectives of retaining trial court discretion structured by guidelines can be thwarted if the guidelines cause shifts of power in the system as to the exercise of the sentencing discretion. See Ohlin and Remington, *Sentencing Structure: Its Effect Upon Systems for the Administration of Criminal Justice,* 23 L. & Contemp. Prob. 495 (1958).